## CHICAGO, R. I. & P. R. CO.   v.   SCHIRF.
### No. 35903.

Supreme Court of Oklahoma.
March 2, 1954.

Savage, Gibson & Benefield, Oklahoma City, for plaintiff in error.

Sam L. Wilhite, Anadarko, for defendant in error.

CORN, Justice.

The plaintiff brought this action against the defendant to recover damages for the destruction of his cotton crop caused by a change by defendant of the natural drainage of surface water.

The plaintiff alleged in his petition, and the evidence showed that he had a growing cotton crop of 64 acres on the farm just south of defendant's railroad track, and near the center of said land the defendant constructed and maintained a trestle, or bridge, for the purpose of allowing surface water to drain from said land into the Washita river, but in 1944 the defendant filled in the opening under said trestle, or bridge, thereby closing it to prevent water from going through; that on May 19, 1951, the said crop was overflowed by water from the Washita river which flood water stood and remained upon and totally destroyed 64 acres of cotton, because of the defendant having closed the outlet.

Plaintiff established by proper proof the value of the crop that was destroyed, and under instructions by the trial court, which were not objected to by the defendant, the jury returned a verdict for plaintiff in the sum of $2,000.

In addition to the defendant's general denial, in its answer, alleged that the railroad track had existed for a long period of time which had become an easement and that Caddo county and landowner, Fitts had, pursuant to a contract with the defendant constructed a dyke on the south side of the tracks.

It is defendant's contention that in 1931 the county and its adjoining landowner Fitts, when they made the contract with the railroad for the construction of the "U" shaped dyke south of Bridge 137, created a new drainage system which became substituted for the original drainage system. That the removal of Bridge 137 and the filling in of the opening with dirt from the wings, or returns of the "U" shaped dyke, did not change the drainage system created by the county in 1931. That plaintiff, as the tenant of the county, took the county lands with the drainage system then existing as it had actually been created by his landowner, and that he cannot be heard to complain that the drainage system existing prior to 1931 had not been maintained, and in support of such contention, cites Cloyes v. Middlebury Electric Co., 80 Vt. 109, 66 A. 1039, 11 L.R.A.,N.S., 693. The 6th headnote in the case is as follows:

"In 1804 complainants' predecessors in title owning riparian lands above a waterfall in a natural stream entered

into a contract with defendants' predecessors, who owned a water power at the falls, whereby, in consideration of $1,000 paid to the latter, and of another $1,000 to be used to improve the stream, all of which was raised by an assessment levied on the benefited riparian lands, defendants' predecessors agreed to remove all obstructions that they had put on the falls as a dam to obstruct the water, and to reduce the falls one foot on a certain level by the removal of rocks, etc., for the purpose of draining the upper riparian land. These improvements having been accomplished, the land so drained was improved, and the stream remained in its altered condition until defendant electric company acquired an interest in the water power in 1893, when it raised the water at the falls two feet by the construction of a dam. Held, that defendants were estopped to so alter the fall of the stream in its artificial improved channel to the injury of complainants."

▮ The facts in the above case are not applicable to the facts in this case. On the above proposition the court gave the following instruction:

"You are further instructed, gentlemen, that the railroad company entered into a contract with the Board of County Commissioners, the owners of said land, by which the Board of County Commissioners agreed to save the defendant harmless from any damages of whatever kind or nature resulting from the construction and maintenance of said proposed dyke, and to take full and complete responsibility for any overflow damage of whatever kind or nature arising from or growing out of the maintenance and construction of said dyke to third parties, but this would not excuse the defendant from liability to the plaintiff if defendant so constructed its roadbed that plaintiff would have been injured regardless of said dyke, if it had been in existence as originally constructed."

That instruction presented to the jury a question of fact for its determination and its verdict with judgment rendered thereon by the trial court will not be disturbed on appeal to this court. In Chicago, Rock Island & Pacific R. Co. v. Hale, 208 Okl. 141, 254 P.2d 338, we held:

"A railroad company may be held liable in damages for so constructing its tracks, grades and yards so as to divert surface waters from their natural drainage upon the lands of another, thus destroying growing crops."

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and DAVISON, O'NEAL and WILLIAMS, JJ., concur.

HALLEY, C. J., dissents.